UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MANUEL RUIZ-MALDONADO,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

Case No. CV08-0397-JLR-JPD
CR05-281-JLR

REPORT AND RECOMMENDATION

## I. INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Manuel Ruiz-Maldonado, a federal inmate proceeding *pro se*, has filed a 28 U.S.C. § 2255 motion, Dkt. No. 1, which seeks to correct, vacate or set aside the sentence imposed following his convictions for conspiracy to distribute methamphetamine, distribution of methamphetamine (two counts), conspiracy to distribute cocaine, distribution of cocaine (three counts), and possession of cocaine with intent to distribute. After careful consideration of the motion, the government's response,[1] all governing authorities and the balance of the record, the Court recommends that the motion be DENIED and this case DISMISSED with prejudice.

---

[1] Petitioner did not file a reply to the government's response.

REPORT AND RECOMMENDATION
PAGE - 1

## II. FACTS AND PROCEDURAL HISTORY

On September 8, 2005, a federal grand jury returned a 17-count superseding indictment charging petitioner and nine other individuals with drug trafficking offenses. Dkt. No. 14-2 at 4. Petitioner entered not guilty pleas to all charges, and the case proceeded to trial.

Petitioner's eight-day trial began on November 28, 2005. The government's evidence included recorded telephone conversations from a court-authorized wiretap on petitioner's telephone, testimony from a co-conspirator who was the other participant in several of petitioner's intercepted telephone calls, the testimony of an undercover police officer who purchased drugs from the co-conspirators, and testimony from federal and local law enforcement personnel who surveilled petitioner and others. In some of the telephone calls read to the jury, petitioner was mentioned by name. Petitioner's voice was also identified by the wiretap monitor who heard him on the telephone and in person and by the undercover police officer.

On December 7, 2005, the jury found petitioner guilty on eight counts. Specifically, petitioner was found guilty of conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (Count One), distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2 (Counts Two and Three), conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (Count Eight), distribution of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2 (Counts Nine, Ten and Eleven), and possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2 (Count Fifteen). Dkt. No. 14-2 at 3.

The jury made specific findings as to Counts One, Two, Three, and Eight. With regard to Count One, the jury found that the offense involved 50 grams or more of methamphetamine (actual), or 500 grams or more of a mixture or substance containing methamphetamine. Dkt. No. 14-2 at 4. As to Count Two, the jury found that the offense involved 5 grams or more of

methamphetamine (actual). *Id.* With respect to Count Three, the jury found that the offense involved 5 grams or more of methamphetamine (actual), or 50 grams or more of a mixture or substance containing methamphetamine. *Id.* With regard to Count Eight, the jury found that the offense involved five kilograms or more of a mixture or substance containing cocaine. *Id.*

The evidence at trial demonstrated that the pure methamphetamine amounts involved in Counts Two and Three were much higher than the five-gram minimum statutory amounts that the jury was asked to find. As to Count Two, the evidence showed that the actual weight of methamphetamine sold by petitioner included 24 grams of pure methamphetamine. *See United States v. Ruiz Maldonado*, Case No. 05-CR-281, Dkt. No. 482 at 7. As to Count Three, the evidence demonstrated that the actual weight of methamphetamine sold by petitioner included 78 grams of pure methamphetamine. *Id.* at 8.

Petitioner's sentencing hearing was held on May 30, 2006. Dkt. No. 12-2 at 90. The eight counts for which petitioner was convicted dealt with two controlled substances, so in accordance with the U.S. Sentencing Guidelines, the marijuana equivalency tables were utilized to convert the methamphetamine and cocaine amounts to their marijuana equivalents to determine the appropriate offense level. The district court found that the marijuana equivalent of the methamphetamine and cocaine amounts was more than 3,000 kilograms, which resulted in an offense level of 34 under the Guidelines. Dkt. No. 12-2 at 93, 102-103. In determining that the marijuana equivalent was more than 3,000 kilograms, the district court relied upon the 50 grams of pure methamphetamine related to Count One, the 24 grams of pure methamphetamine related to Count Two, and the 78 grams of pure methamphetamine related to Count Three. *Id.* at 101-103. The Court did not consider the additional convictions in determining petitioner's offense level.

Petitioner's criminal history included four prior convictions, and two convictions were counted to determine his criminal history category under the Sentencing Guidelines. Those two convictions—a 2001 conviction for unlawful imprisonment in Snohomish County Superior

Court and a 2003 conviction for disorderly conduct and malicious mischief in Everett District Court—resulted in a criminal history category II for petitioner. Dkt. No. 12-2 at 93; 12-4 at 13-15. This was not contested at the sentencing hearing. Dkt. No. 12-2 at 93.

The government and the probation office recommended raising petitioner's offense level to 37 based upon his alleged supervisory role in a major drug trafficking conspiracy, and recommended a prison sentence of 180 months. Dkt. No. 12-2 at 108; 12-4 at 21. The district court declined to raise petitioner's offense level, and imposed a sentence of 168 months in prison, followed by five years of supervised release, based on offense level of 34 and a criminal history category II. Dkt. No. 12-2 at 116-117.

Petitioner timely filed an appeal with the Court of Appeals for the Ninth Circuit. He raised only one issue on appeal, alleging that the district court erred in failing to suppress evidence obtained through the use of the wiretap because the wiretap application failed to meet the statutory requirement of "necessity." *See United States v. Ruiz-Maldonado*, 221 Fed. Appx. 535, 536 (9th Cir. 2007). On February 22, 2007, the Ninth Circuit affirmed the district court's judgment. *Id.* at 537. On March 29, 2007, the Ninth Circuit denied petitioner's petition for a rehearing. Thereafter, petitioner filed a petition for certiorari with the United States Supreme Court, which was denied on October 1, 2007. *Ruiz-Maldonado v. United States*, 2007 U.S. LEXIS 10064 (2007).

The instant § 2255 motion was timely filed with the district court on March 7, 2008. Dkt. No. 1. Petitioner is presently incarcerated at the U.S. Penitentiary in Tucson, Arizona.

### III. DISCUSSION

As his basis for relief, petitioner asserts that his trial counsel rendered ineffective assistance by (1) failing to obtain a voice exemplar from petitioner for comparison to voices recorded on the federal wiretap; (2) failing to obtain an expert to analyze the audio recordings from the wiretap; (3) allowing non-experts to testify concerning the recordings; (4) failing to retain an independent chemist to test the purity of the cocaine and methamphetamine related to

the charges against petitioner; (5) failing to investigate two prior convictions of petitioner as part of his determination whether petitioner should testify at trial; and (6) failing to move to sever the trial of co-defendant Efren Reynaga. *See* Dkt. No. 1 at 4-8. Petitioner also asserts that his appellate counsel (the same person as his trial counsel) rendered ineffective assistance when he failed to raise on appeal alleged errors and/or discrepancies in petitioner's pre-sentence report. *See* Dkt. No. 1 at 9-10.

### A.  Ineffective Assistance of Trial Counsel

Claims of ineffectiveness of counsel are reviewed according to the standard announced in *Strickland v. Washington*, 466 U.S. 668, 687-90 (1984). In order to prevail on such a claim, the petitioner must establish two elements. First, he must establish that counsel's performance was deficient, *i.e.*, that it fell below an "objective standard of reasonableness" under "prevailing professional norms." *Strickland*, 466 U.S. at 687-88. Second, the petitioner must establish that he was prejudiced by counsel's deficient performance, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Considering the first prong of the *Strickland* test, the petitioner must rebut the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotations omitted). The test is not whether another lawyer, with the benefit of hindsight, would have acted differently, but rather, whether "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 689; *see also Dows v. Wood*, 211 F.3d 480, 487 (9th Cir. 2000) ("Under *Strickland*, counsel's representation must be only objectively reasonable, not flawless or to the highest degree of skill.").

To meet the second *Strickland* requirement of prejudice, the petitioner must show that counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. It is not enough that counsel's errors had "some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the case. *Id.* Failure to satisfy either prong of the *Strickland* test obviates the need to consider the other. *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002).

The Court concludes that petitioner's trial counsel's conduct does not rise to the level of ineffective assistance of counsel. As for counsel's alleged failure to obtain a voice exemplar and an expert to analyze the wiretap's audio recordings, the Court finds that counsel could have reasonably decided that a voice exemplar and expert analysis of the recordings was unnecessary and an unwise use of limited resources, and, moreover, would not have made a difference in the outcome of the case. Petitioner's voice on the audio recordings was identified by three different witnesses at trial, his name was mentioned in some of the telephone calls, and federal and local law enforcement personnel testified that petitioner was the user of the telephone that was subject to the wiretap and that petitioner acted in conformity with the content of the recorded telephone conversations. Accordingly, it was not objectively unreasonable for petitioner's counsel to decide to not obtain a voice exemplar or to hire an expert to analyze the audio recordings. *See United States v. Bird*, 2006 U.S. Dist. LEXIS 39110, at *6 (D. Kan. June 13, 2006) (holding counsel's decision to not use voice exemplar was not constitutional error and noting ample evidence in the record linking the defendant to the charged crimes). Further, petitioner has made no showing that a voice exemplar or expert analysis would have had any bearing on the outcome of the case, particularly in view of all the evidence against petitioner at trial.

Petitioner also complains that his counsel allowed non-experts to identify petitioner's voice on the wiretap's audio recordings. However, the use of lay witness testimony to identify petitioner's voice is entirely consistent with the Federal Rules of Evidence, which provide that voice identification may be provided "by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker," FED. R. EVID. 901(b)(5), and that parties to telephone conversations may be identified by "circumstances, including self-identification, [that] show the person answering to be the one called," FED. R. EVID. 901(b)(6). There is no requirement that an expert identify petitioner's voice on the audio recordings, and petitioner's counsel not objecting to lay witnesses identifying petitioner's voice was not error.[2]

With respect to counsel's failure to retain an independent chemist to test the purity of the cocaine and methamphetamine related to the charges against petitioner, the Court also finds that petitioner's counsel could have made a reasonable decision that hiring an independent chemist was unnecessary and an injudicious use of limited resources. Petitioner has not made any showing that an independent chemist would have found that the government's chemist's drug analysis was faulty or would have reached different results regarding the purity of the cocaine and methamphetamine. Further, petitioner has not made any showing that different purity levels would have made any material difference in the outcome of the case or the length of his sentence. Indeed, petitioner's convictions were based in part on the jury's findings that methamphetamine and cocaine were merely present in a substance or mixture. *See* Dkt. No.

---

[2] Petitioner also asserts that his counsel failed to object to Maria Amaya, an interpreter who monitored the wiretap, testifying as an "expert witness" even though she "was not an expert in voice identification but only an interpreter." Dkt. No. 1 at 7. However, it is not clear if petitioner is claiming that Amaya was improperly identified as a voice identification expert or that she was improperly identified as an expert when she should have been identified as an interpreter. In any event, the Court has reviewed the relevant portions of the record in petitioner's criminal case and has not found an instance of Amaya being identified as an expert. Moreover, any failure by petitioner's counsel to object to an incorrect designation of a witness who also served as an interpreter does not rise to the level of an error so serious that counsel was not functioning as the "counsel" guaranteed to petitioner by the Sixth Amendment. *See Strickland*, 466 U.S. at 687, 689.

REPORT AND RECOMMENDATION
PAGE - 7

14-2 at 4. While the length of petitioner's sentence was based in part on purity levels of the methamphetamine related to Counts Two and Three, petitioner has not demonstrated how an analysis by an independent chemist would have had any favorable effect on the length of his sentence. Petitioner's counsel could have reached a reasonable conclusion that it would not have been worthwhile to retain an independent chemist, and there is no showing by petitioner to cause the Court to question that judgment.

Petitioner also asserts that his counsel rendered ineffective assistance because he failed to investigate two prior convictions of petitioner as part of his determination whether petitioner should testify at trial. Dkt. No. 1 at 5-6. However, even assuming, *arguendo*, that petitioner's counsel did *not* look into plaintiff's prior convictions (there is no showing by plaintiff that his counsel did not), petitioner has not demonstrated that an investigation would have revealed that his two prior convictions (to which petitioner pled guilty) were somehow constitutionally invalid and therefore could not be used for the purpose of impeaching petitioner at trial. Petitioner only states that he "couldn't remember" if he was represented by counsel when he pled guilty in 2001 to unlawful imprisonment, or whether the state court advised him of the rights he was giving up when he pled guilty to unlawful imprisonment in 2001 and to disorderly conduct and malicious mischief in 2003. *Id.* This is woefully insufficient to demonstrate that an investigation by petitioner's counsel would have revealed that petitioner's two prior convictions were constitutionally invalid and therefore could not have been used to impeach petitioner at trial.

Moreover, assuming for the sake of argument that an investigation would have revealed that petitioner's two prior convictions were invalid, petitioner has not demonstrated counsel's advice regarding the decision to testify would have been different. In all likelihood, there were several factors that led petitioner's counsel to recommend that petitioner not take the stand.

Additionally, petitioner has not demonstrated that his failure to testify actually prejudiced him. That is, there is no showing that but for his failure to testify, the outcome of

REPORT AND RECOMMENDATION
PAGE - 8

the trial would have been different. *See Strickland*, 466 U.S. at 691. Petitioner points to his co-defendant, Efren Reynaga, who testified at trial and was acquitted, as evidence that had petitioner testified, the outcome of his trial would have been different. However, not only is this pure speculation by petitioner, Reynaga is not an appropriate reference point for comparison. Reynaga was alleged to have been involved in *only one* drug transaction and was charged with only two counts of conspiracy to distribute methamphetamine and distribution of methamphetamine. Dkt. No. 14-2 at 5-6. Reynaga testified at trial that he was not a party to the drug transaction in question and alleged that it was a case of mistaken identity by the law enforcement personnel, and the jury acquitted him. In stark contrast to Reynaga, the evidence against petitioner was extensive, and showed him to be a significant player in a major drug trafficking operation. Therefore, even if plaintiff testified as Reynaga did, it is unlikely that his testimony would have helped his case or overcome all the evidence against him.

Petitioner also asserts that had his trial counsel investigated his 2001 conviction for unlawful imprisonment and found it to be invalid, petitioner would have been sentenced at a criminal history category I, as opposed to a criminal history category II. However, even if his 2001 conviction was constitutionally invalid (and there has been no such showing by petitioner), petitioner cannot show that he was prejudiced because his sentence still falls within the range recommended by the Sentencing Guidelines for offense level 34 with a criminal history category I. At offense level 34 with a criminal history category I, the Sentencing Guidelines' range is 151-188 months. UNITED STATES SENTENCING GUIDELINES MANUAL § 5A (2005). Petitioner's sentence was 168 months, which falls within this range, and therefore he cannot show that he was prejudiced. While plaintiff claims that "he believes that because the Court imposed the 'low end' of the Category II Criminal History, it may well have imposed a sentence" at the "low-end" of the criminal history category I, this is pure conjecture.

Lastly, with regard to petitioner's claim that his counsel failed to move to sever the trial of co-defendant Reynaga, Dkt. No. 1 at 8, petitioner has made no showing that his counsel's

REPORT AND RECOMMENDATION
PAGE - 9

decision not to move to sever the trial was unreasonable, or that severing the trial of Reynaga would have made any difference in the outcome. Further, the record in Reynaga's criminal case reveals that his counsel moved to sever his client's trial on at least two occasions which were denied by the Court. *See United States v. Reynaga*, Case No. 05-CR-281, Dkt. Nos. 155, 203, 243, 284. Therefore, petitioner's counsel may have decided that a motion to sever was duplicative and unnecessary, as there is no basis to believe that the result would have been different had petitioner's counsel moved to sever the trial.

B. <u>Ineffective Assistance of Appellate Counsel</u>

Petitioner also claims that his appellate counsel (the same person as his trial counsel) rendered ineffective assistance. The *Strickland* standard applies to ineffective assistance of appellate counsel claims as well. *See Turner v. Calderon*, 281 F.3d 851, 872 (9th. Cir. 2002). That is, the petitioner must show that appellate counsel's performance was deficient and that he was prejudiced as a result. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Petitioner claims that his appellate counsel rendered ineffective assistance because he did not raise on appeal alleged discrepancies and/or errors in petitioner's pre-sentence report. Dkt. No. 1 at 9-10. Specifically, petitioner contends the following: (1) the weights of the methamphetamine and cocaine underpinning petitioner's convictions appear inconsistent in the pre-sentence report; (2) in one instance, the pre-sentence report does not specify whether the amount of cocaine stated is actual or a mixture; and (3) in one instance, the pre-sentence report states that petitioner pled guilty instead of stating that he was found guilty by a jury. *Id.*

As an initial matter, none of petitioner's alleged discrepancies and/or errors in his pre-sentence report have merit. First, petitioner is comparing the amounts of methamphetamine and cocaine that the evidence showed at trial with the jury's specific findings as to the range of drug amounts involved with regard to Counts One and Eight. Petitioner is comparing apples to oranges. Second, while is true that the pre-sentence report does not specify whether the 133.3 grams of cocaine referenced in Paragraph 43 is actual or a mixture, it is clear from the context

REPORT AND RECOMMENDATION
PAGE - 10

that it is an actual amount. Dkt. No. 14-2 at 12. In addition, Paragraphs 28, 29, 30, and 35 in the pre-sentence report make clear that the 133.3 figure is an actual amount, and not a mixture. Dkt. No. 14-2 at 8-10. Third, contrary to what petitioner contends, the pre-sentence report does not state that petitioner pled guilty, but that petitioner was "found guilty at trial . . . ." Dkt. No. 14-2 at 11. Accordingly, petitioner's appellate counsel did not render ineffective assistance. *See Turner*, 281 F.3d.at 872 (holding that "[a] failure to raise untenable issues on appeal does not fall below the *Strickland* standard.").

In any case, none of the above matters are relevant or material because a review of the sentencing transcript reveals that none of them factored into the district court's sentencing of petitioner, which was accurately based on the jury's verdict and findings and the evidence presented at trial. *See* Dkt. No. 12-2 at 93, 101-103, 109-110.

## IV. CONCLUSION

For the foregoing reasons, this Court recommends that the motion be DENIED and this case DISMISSED with prejudice. A proposed Order accompanies this Report and Recommendation.

DATED this 14th day of October, 2008.

*/s/ James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 11